1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                         DISTRICT OF NEVADA

8                              * * *

9   BRANCH BANKING AND TRUST              )
    COMPANY, a North Carolina banking     )
10  corporation,                          )          2:12-cv-01679-LRH-PAL
                                          )
11              Plaintiff,                )
                                          )
12  v.                                    )          ORDER
                                          )
13  ELOY BUSINESS PARK, LLC, a Nevada     )
    limited liability company, YOEL INY;  )
14  NOAM SCHWARTZ; YOEL INY, Trustee of   )
    the Y&T INY FAMILY TRUST dated June 8,)
15  1994; NOAM SCHWARTZ, Trustee of the   )
    NOAM SCHWARTZ TRUST dated August      )
16  19, 1999; D.M.S.I., LLC, a Nevada limited )
    liability company; and DOES 1 through 10, )
17  inclusive,                            )
                                          )
18              Defendants.               )
    _____)

19

20        Before the Court is Plaintiff Branch Banking and Trust Company's ("Branch Banking")

21  Motion for Summary Judgment as to Liability and Application for Deficiency Judgment Hearing.

22  Doc. #53.[1]  Defendants Eloy Business Park, LLC; Yoel Iny; Noam Schwartz; Yoel Iny, trustee of

23  the Y&T Family Trust dated June 8, 1994; Noam Schwartz, trustee of the Noam Schwartz Trust

24  dated August 19, 1999; and D.M.S.I., LLC (collectively "Defendants") filed a Response (Doc.

25  #59), to which Branch Banking replied (Doc. #69).

26
        _____
            [1] Refers to the Court's docket number.

1    Also before the Court is Defendants' Motion for Summary Judgment.  Doc. #52.  Branch

2    Banking filed a Response (Doc. #60), to which Defendants replied (Doc. #67).  Defendants also

3    filed a Motion to Certify Questions of Law to the Nevada Supreme Court.  Doc. #71.  Branch

4    Banking filed a Response (Doc. #75), to which Defendants replied (Doc. #76).

5    **I.     Facts and Background**

6        This action arises out of Defendants' alleged breach of a secured loan agreement.

7    Following a judicial foreclosure sale on the real property securing the loan, Branch Banking filed

8    the present action to obtain a deficiency judgment against Defendants.  Doc. #1.  The undisputed

9    facts are as follows.  On September 20, 2007, Borrower Eloy Business Park, LLC ("Borrower")

10   executed and delivered a Promissory Note Secured by Deed of Trust to Colonial Bank, N.A.

11   ("Colonial Bank"), in the original amount of $6,300,000.00 (the "Note").  Doc. #52, Ex. 1; Doc.

12   #53, Ex. 2.  The Note was secured by a Deed of Trust and Security Agreement with Assignment of

13   Rents and Fixture Filing ("Deed of Trust"), dated September 20, 2007, encumbering certain real

14   property in Pinal County, Arizona (the "Property").[2]  Doc. #52, Ex. 2; Doc. #53, Ex. 3.  Also on

15   September 20, 2007, Defendant Yoel Iny ("Guarantor") executed and delivered to Colonial Bank a

16   Guarantee (the "Guarantee").  Doc. #52, Ex. 3.  Pursuant to the Guarantee, the Guarantor

17   guaranteed the payment of all indebtedness of the Borrower under the loan evidenced by the Note

18   (the "Loan").  *Id.*

19       On August 14, 2009, Colonial Bank was closed by the State Banking Department of the

20   State of Alabama and the Federal Deposit Insurance Corporation ("FDIC") was named receiver in

21   order to liquidate and distribute the assets of Colonial Bank.  Doc. #52, Ex. 4; Doc. #53, Ex. 5.  On

22   September 28, 2011, the FDIC executed an Assignment of Security Instruments, Notes and Other

23   Loan Documents (the "Assignment"), to be deemed effective as of August 14, 2009.  *Id.*  Pursuant

24   to the terms of the Assignment, the FDIC assigned all rights, title, and interest in the Note, the

25   _____

26       [2]   The Deed of Trust was recorded in Pinal County, Arizona on September 24, 2007.  Doc. #52, Ex.
     2; Doc. #53, Ex. 3.

2

Deed of Trust, and the Guarantee to Branch Banking. *Id.* The Assignment was recorded in Pinal County, Arizona on November 4, 2011. *Id.*

Branch Banking alleges that the Borrower failed to pay the outstanding principal balance of the loan due under the Note on September 24, 2009.[3] Doc. #53 at 5. By demand letter dated June 16, 2011 (the "Demand Letter"), Branch Banking indicated its intent to take steps to exercise its rights and remedies under the Loan on or after July 8, 2011. Doc. #53, Ex. 7. Branch Banking alleges that the Borrower and the Guarantors failed and refused to pay the balance due under the Note. Doc. #1, ¶27. On December 16, 2011, Branch Banking commenced a judicial foreclosure action under the Deed of Trust by filing a Verified Complaint in the Superior Court of the County of Maricopa, Arizona. Doc. #52, Ex. 5. A Default Judgment ordering the judicial foreclosure of the Property in full or partial satisfaction of the outstanding balance due under the Loan via Sheriff's sale was entered by the Superior Court of the County of Pinal, Arizona, on March 19, 2012. Doc. #52, Ex. 7; Doc. #50, Ex. 8. The Sheriff of Pinal County, Arizona, sold the Property on July 19, 2012, at public auction for a cash bid of $480,000.00 in partial satisfaction of the Loan. Doc. #52, Ex. 8; Doc. #53, Ex. 9.

On September 24, 2012, Branch Banking filed a Complaint before this Court, alleging claims for deficiency, breach of guarantee, and breach of the covenant of good faith and fair dealing. Doc. #1. Branch Banking claims that there is an unpaid principal balance of $3,472,779.60 as of July 19, 2012. *See id.* at ¶28.

## II.   Legal Standard

### A.   Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record

---

[3]   Branch Banking alleges that the Borrower failed to pay the outstanding principal balance in the amount of $3,276,829.19, plus accrued interest, due under the Note on September 24, 2009. Doc. #1, ¶21. Pursuant to the terms of the Note, upon default thereunder the interest rate under the Note automatically increased to a default rate equal to five percent (5.00%) in excess of the stated contract rate under the Note. Doc. #52, Ex. 1 at 3; Doc. #53, Ex. 1 at 3.

show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).  On an issue as to which the non-moving party has the burden of proof, however, the moving party can prevail merely by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case.  *Celotex*, 477 U.S. at 323.

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party.  *See id.* at 252.  Finally, whereas here, both sides have moved for summary judgment, the court must consider evidence

submitted in support of both motions before ruling on either motion.  *See Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

**B.    Certification to Nevada Supreme Court**

Pursuant to Nevada Rule of Appellate Procedure ("NRAP") 5:

> The [Nevada] Supreme Court may answer questions of law certified to it by . . . a United States District Court . . . when requested by the certifying court, if there are involved in any proceeding before th[at] court[] questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of this state.

**III.    Cross Motions for Summary Judgment**

Branch Banking contends that this is a straightforward breach of contract case, in which the Borrower and the Guarantors failed to repay their loan obligations under the Note and the Guarantee, thereby entitling Branch Banking to summary judgment as to liability against Defendants.  The Court agrees.  In a breach of contract action, Nevada law requires that the plaintiff establish (1) the existence of a valid contract, (2) performance by the plaintiff, (3) breach by the defendant, and (3) damage as a result of the breach.  *See Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev.1865)); *see also Anahuac Mgmt. v. Mazer*, No. 2:09-cv-01590-RLH-PAL, 2012 WL 1142714, at *3 (citing *Calloway v. City of Reno*, 116, Nev. 250, 993 P.2d 1259, 1263 (2001)).  In addition, Nevada law provides that a guarantor is "liable on his own obligation, which is absolute and independent of the note itself."  *Randono v. Turk*, 86 Nev. 123, 466 P.2d 218, 223 (1970).

Here, it is undisputed that the Loan documents (i.e., the Note, the Deed of Trust, and the Guarantee) are valid and enforceable contracts.[4]  Similarly, Defendants do not dispute Branch

---

[4] It is indisputable that Nevada law governs the Note.  *See* Doc. #52, Ex. 1; Doc. #53, Ex. 2 ("The laws of the State of Nevada shall govern the validity, construction, performance and effect of this Note.")  It is further indisputable that Arizona law governs the foreclosure under the Deed of Trust.  *See* Doc. #52, Ex. 2; Doc. #53, Ex. 3 ("Trustor acknowledges and agrees that this Deed of Trust and the other Loan Documents . . . shall be governed by and construed in accordance with the laws of the State of Nevada, except to the extent that Arizona laws govern[] the enforcement of any term of this Deed of Trust and/or the trustee's sale hereunder").  Lastly, it is indisputable that Nevada law governs the Guarantee.  *See* Doc. #52, Ex. 3; Doc.

Banking's standing as the legitimate successor-in-interest to Colonial Bank for the purposes of this Loan.  Pursuant to the Note, the Borrower agreed "to pay to [Lender] . . . , in currently available funds of the United States," the outstanding amount due under the Note on September 24, 2009.  Doc. #52, Ex. 1 at 1; Doc. #53, Ex. 2 at 1.  The Note further states that failure to "make any payment provided for in this Note when due," or within fifteen days of the due date, would result in default.  Doc. #52, Ex. 1 at 2-3; Doc. #53, Ex. 2 at 2-3.  It is undisputed that the Borrower received the requested funds pursuant to the Loan documents.  It is further undisputed that the Borrower failed to repay the debt under the Note when it became due on September 24, 2009.  Accordingly, the Court finds that the Borrower breached the Note when it failed to repay Branch Banking on September 24, 2009.  Similarly, the Guarantors each executed the Guarantee, pursuant to which each Guarantor "unconditionally guarantee[d] . . . the punctual payment, when due, . . . of all obligations of Borrower."  Doc. #52, Ex. 3 at 2; Doc. #53, Ex. 4 at 2.  It is undisputed that the Guarantors failed to repay the Borrower's debt under the Note when it became due on September 24, 2009.  Accordingly, the Court finds that the Guarantors breached the Guarantee when they failed to repay the debt upon the Borrower's default.

---

#53, Ex. 4 ("This Guarantee shall be governed by and construed in accordance with the laws of the State of Nevada.").

   To the extent that Defendants challenge the admissibility of the loan documents, their objection is overruled.  Specifically, Defendants challenge Peter Nugent's Declaration as a means to authenticate the loan documents.  *See* Doc. #59 at 17.  Defendants aver that Nugent has no personal knowledge of the documents because they were issued by Colonial Bank, not Branch Banking, and there is no evidence that Nugent ever worked for Colonial Bank or otherwise has personal knowledge of its business records.  *See id.*  The Court rejects Defendants' argument and finds that Nugent is competent to lay the foundation for each exhibit in Branch Banking's Motion for Summary Judgment.  Defendants have independently authenticated the loan documents. Ronnie Schwartz, Defendants' Person Most Knowledgeable, acknowledged and authenticated each of the loan documents at issue and testified that there is no writing evidencing any alleged oral loan modification.  *See* Doc. #53, Ex. 10.

   Defendants also challenge the admissibility of Branch Banking's evidence regarding the interest and principal owing and due on the Loan.  However, as Branch Banking correctly avers, their Motion for Summary Judgment is limited to the issue of liability.  Nevada law requires an evidentiary hearing to establish damages in deficiency judgment cases.  *See* NRS 40.455 *et seq.*  As such, the Court declines to rule on the admissibility of any evidence purporting to calculate the  interest and principal owing and due on the Loan at this juncture.

1    Defendants' oppose judgment in favor of Branch Banking on the following grounds:

2   (1) Branch Banking's judicial foreclosure complaint did not request a monetary judgment as

3   required by Arizona law, thereby extinguishing Branch Banking's right to pursue a deficiency

4   against the Borrower; (2) Branch Banking destroyed the Guarantors' subrogation rights against the

5   Borrower, thereby extinguishing Branch Banking's right to pursue recovery against the Guarantors;

6   (3) Branch Banking did not carry its burden of establishing the "consideration paid" element for a

7   deficiency action under NRS 40.459(1)(c); (4) Defendants should receive an off-set for the amounts

8   paid by the FDIC to Branch Banking pursuant to the loss sharing agreement. *See* Doc. #52; Doc.

9   #59.  The Court will address each of Defendants' arguments in turn.

10       **A.    Branch Banking's Failure to Request or Obtain a Money Judgment in the
             Judicial Foreclosure Action in Arizona Does Not Affect Its Right to Pursue a
11           Deficiency in Nevada**

12      Defendants contend that Branch Banking is barred from recovering a deficiency on the debt

13  from the Borrower because Branch Banking did not obtain a monetary judgment for the entire

14  amount owed on the Note in the judicial foreclosure action in accordance with Arizona law.[5]

15  Defendants' argument in this regard is without merit.  The Note specifically provides that "[t]he

16  laws of the State of Nevada shall govern the validity, construction, performance and effect of this

17  Note." Doc. #52, Ex. 1; Doc. #53, Ex. 2.  Similarly, the Guarantee provides that "[t]his Guarantee

18  shall be governed by and construed in accordance with the laws of the State of Nevada." Doc. #52,

19  Ex. 3; Doc. #53, Ex. 4.  Finally, the Deed of Trust confirms that the Note and, thus, the debt shall

20  be governed by Nevada law:

21           Trustor acknowledges and agrees that this Deed of Trust and the other Loan
             Documents, including provisions with respect to the making of any disbursements,
22           the creation of any monetary obligations and the rights accruing and compensation
             payable to Beneficiary in connection therewith, shall be governed by and construed
23           in accordance with the laws of the State of Nevada, except to the extent that Arizona
             laws govern[] the enforcement of any term of this Deed of Trust and/or the trustee's
24           sale hereunder.

25  ─────────────────

26      [5] Defendants do not otherwise assert that Branch Banking failed to comply with the Arizona judicial
    foreclosure process.

Doc. #52, Ex. 2 at 14; Doc. #53, Ex. 3 at 14.  Thus, the parties clearly delineated that the rights and obligations of the parties under the Loan would be governed by Nevada law.

In *Sievers v. Diversified Mortgage Investors*, 95 Nev. 811, 603 P.2d 270, 273 (1979), the Nevada Supreme Court confirmed the general proposition that parties to a contract may chose the law applicable in the construction of their contract so long as the parties act in good faith and without the intent to evade the law of the situs.  Moreover, in *Key Bank of Alaska v. Donnels*, 106 Nev. 49, 787 P.2d 382, 384 (Nev. 1990), the Nevada Supreme Court confirmed that, in the absence of evidence or argument regarding bad faith or evasion of Nevada law, a provision in the note that it was to be governed by Alaska law was valid and enforceable even though the deed of trust on Nevada real property securing the note provided that the foreclosure was to be governed by Nevada law.  Here, there is no indication that the parties acted in bad faith or with an intention to evade Arizona law in selecting Nevada law to govern the Note.  Accordingly, the Court finds that the Note contains a valid and enforceable agreement between the parties that Nevada law is to govern the debt and, thus, any action to recover a deficiency.  The fact that the Note references the Deed of Trust does not change the Court's conclusion in this regard.

Indeed, the distinction between a borrower's debt and any security which secures that debt obligation is well established under both Nevada and Arizona law.  Nevada law provides that an action on a debt arises out of the promissory note itself, not any security interest that secures the debt obligation, such as a deed of trust.  *See Key Bank of Alaska v. Donnels*, 106 Nev. 49, 787 P.2d 383, 384 (1990) ("[A]n action for a deficiency after partial satisfaction through sale of the security is an action on the debt"); *Behringer Harvard Lake Tahoe, LLC v. Bank of Am., N.A.*, No. 3:13-cv-00057-MDD-PAL, 2013 WL 4006867, at *4 (D. Nev. Aug. 5, 2013).  Similarly, Arizona courts recognize that "the source of a borrower's debt is the promissory note, not the trustee's sale: 'the foreclosure or trustee's sale is ancillary to the collection of the debt, not the other way around.'" *Morgan AZ Fin., L.L.C. v. Gotses*, No. 1 CA-CV 13-0046, 2014 WL 1910967, at *2 (Ariz. App. May 13, 2014) (quoting *Nat'l Bank of Ariz. v. Schwartz*, 230 Ariz. 310, 283 P.3d 41, 44 (App.

2012)).  In *Schwartz*, the court recognized that "the contractual debt is foremost with any foreclosure or sale being secondary and merely a means of recovery on the original debt."  283 P.3d at 44.  As such, Branch Banking's contractual right to pursue recovery on the debt is separate and distinct from its right to pursue recovery on the property securing that debt.

Applying Nevada law related to deficiency judgments, the Court finds that Branch Banking is not precluded from bringing a second action on the Note to recover a deficiency.  Nevada deficiency legislation provides that:

> upon application of the judgment creditor or the beneficiary of the deed of trust within 6 months after the date of the foreclosure sale or the trustee's sale held pursuant to NRS 107.080, respectively, and after the required hearing, the court shall award a deficiency judgment to the judgment creditor or the beneficiary of the deed of trust if it appears from the sheriff's return or the recital of consideration in the trustee's deed that there is a deficiency of the proceeds of the sale and a balance remaining due to the judgment creditor or the beneficiary of the deed of trust, respectively.

NRS 40.455(1).[6]  However, as Defendants point out, the Nevada Legislature also enacted the so-called "one-action" rule, which provides that "there may be but one action for the recovery of any debt, or for the enforcement of any right secured by a mortgage or other lien upon real estate" in which the Court must enter judgment "for the amount found due the plaintiff."  NRS 40.430(1).  "The Nevada one-action rule requires a creditor seeking recovery on a debt to judicially foreclose on all real property encumbered as security for the debt, sue on the entire debt and obtain a deficiency judgment against the debtor in the same foreclosure action."  *Bonicamp v. Vazquez*, 120 Nev. 377, 91 P.3d 584, 586 (2004) (citing *Keever v. Nicholas Beers Co.*, 96 Nev. 509, 611 P.2d 1079, 1082 (1980)); *Nev. Wholesale Lumber v. Myers Realty*, 92 Nev. 24, 544 P.2d 1204, 1207 (1976)).  In *McDonald v. D.P. Alexander & Las Vegas Boulevard, LLC*, the Nevada Supreme Court clarified that "the purpose behind the one-action rule in Nevada is to prevent harassment of debtors

---

[6] Defendants do not challenge that Branch Banking has complied with the provisions of NRS 40.455(1) by seeking a deficiency judgment within 6 months after the date of the foreclosure sale.  Branch Banking foreclosed on the Property via Sheriff's sale on July 19, 2012.  Doc. #53, Ex. 13.  Within 6 months thereafter, on October 10, 2012, Branch Banking filed the present action for deficiency.  Doc. #1.

by creditors attempting double recovery by seeking a full money judgment against the debtor and by seeking to recover the real property securing the debt."  121 Nev. 812, 123 P.3d 748, 751 (2005) (citing *In re Hart*, 50 B.R. 956, 960 (Bankr. D. Nev. 1985), rejected on other grounds by *In re Pederson*, 875 F.2d 781 (9th Cir. 1989)).  As such, "to recover a debt secured by real property in Nevada, a creditor must seek to recover on the property through judicial foreclosure before recovering from the debtor personally."[7] *Id.* at 750.

Here, it appears that if the judicial foreclosure had taken place in Nevada, as opposed to Arizona, the one-action rule would indeed bar a second action to recover a deficiency under the Note.  However, as Branch Banking correctly avers, Section 6(c) explicitly exempts from the one-action rule any act or proceeding "[t]o enforce a mortgage or other lien upon any real or personal collateral located outside of the state which does not, except as required under the laws of that jurisdiction, result in a personal judgment against the debtor."  NRS 40.430(6)(c).  Here, the judicial foreclosure judgment in Arizona did not result in a personal judgment against the Borrower.  In fact, the judgment explicitly provided that the court's finding that the Borrower owed Branch Banking $3,472,779.60 "does not create a monetary judgment in favor of [Branch Banking].  Should [Branch Banking] desire to seek a monetary judgment, it can seek a judgment in separate proceedings."  *See* Doc. #52, Ex. 7 at 3.  Accordingly, the Court finds that the aforementioned exception applies to exempt Branch Banking from Nevada's one-action rule.

Defendants invoke the language "except as required under the laws of that jurisdiction" in arguing that the exception does not apply because the judicial foreclosure in Arizona could have included a personal deficiency judgment.  The parties have not identified, nor is the Court aware of, any Nevada authority interpreting this particular clause in the exception to the one-action rule.  Nevertheless, contrary to Defendants' apparent understanding, the Court interprets the exception to

---

[7] "The one-action rule also applies to a guarantor or surety of a debt on a mortgage or other contract secured by an interest in real property."  *McDonald*, 123 P.3d at 750 (citing *First Interstate Bank v. Shields*, 102 Nev. 616, 730 P.2d 429, 430-32 (1986)).

apply where an act or proceeding to enforce a mortgage or other lien upon any real or personal collateral located outside of the state <u>does not</u> result in a personal judgment against the debtor. That the judgment in Arizona *could have* included a monetary judgment is beside the point.  It did not.  Moreover, even if Arizona law indeed *requires* that, in order to obtain a monetary judgment on the debt or "deficiency" in Arizona, a money judgment for the entire amount must be issued in the foreclosure action, the Court is nevertheless unpersuaded that the exception does not apply in these circumstances.

Defendants cite Arizona Revised Statute ("ARS") § 33-725(A), which provides that in a judicial foreclosure action, "[w]hen a mortgage or deed of trust is foreclosed, the court shall give judgment for the entire amount determined due, and shall direct the mortgaged property, or as much thereof as is necessary to satisfy the judgment, to be sold."  ARS § 33-727(A) further provides that "if the mortgaged property does not sell for an amount sufficient to satisfy the judgment, an execution may be issued for the balance against the mortgager where there has been personal service, or the defendant has appeared in the action."  Indeed, Arizona courts have stated:

> *there is no such thing under [Arizona] law as a 'deficiency judgment'* in the sense that a formal judgment of that description is rendered by the court . . . for the amount not made by the sale of the mortgaged property.  *There is only the original judgment for the full amount of the indebtedness, upon which a deficiency may exist* after the issuance and return of the special execution . . .

*Faber v. Althoff*, 168 Ariz. 213, 812 P.2d 1031, 1037 (App. 1990) (quoting *Bank of Douglas v. Neel*, 30 Ariz. 375, 247 P. 132, 134 (1926)) (emphasis in original).  Arizona courts have "construed these two provisions to conclude: first, that a foreclosure judgment *must* specifically provide for the contingency of a deficiency, and that, in the absence of that provision, a deficiency judgment will not be read into the judgment; and second, if the complaint requests such a deficiency provision and the judgment fails to include it, then the matter is in effect litigated and decided adversely to the plaintiff whether or not the record supports such a ruling."  *Id.* at 1035 (citing *Greater Ariz. Sav. & Loan Ass'n v. Gleeson*, 5 Ariz. App. 577, 429 P.2d 464, 466 (1967)) (emphasis added).  Read together, Section 33-725 and Section 33-727 provide that "if there is to be a deficiency, it

shall be provided for in the judgment of foreclosure." *Gleeson*, 429 P.2d at 579.

Recognizing that Arizona law mandates that, in order to obtain a deficiency in Arizona, the judgment in a foreclosure action must "render a defendant liable for the *full* amount of the debt, not just that portion of the debt that will be satisfied from the proceeds of the sale of the property," the Court is nevertheless unpersuaded that Branch Banking is barred from seeking a deficiency judgment pursuant to Nevada law. While Arizona law envisions a singular enforcement process on the underlying note, Nevada specifically exempts from the one-action rule out-of-state foreclosure actions that do not result in a personal judgment against the debtor. Here, Branch Banking did not request or receive a deficiency in Arizona. In these circumstances, Arizona law provides that one will not be read into the foreclosure judgment. As such, Branch Banking would, in all likelihood, be barred from seeking and/or obtaining a deficiency in Arizona. Similarly, Branch Banking would not be able to recover a deficiency merely by domesticating the Arizona foreclosure judgment in Nevada. However, because out-of-state foreclosures that do not result in a personal judgment against the debtor are exempt from Nevada's one-action rule, the Court finds that Branch Banking is not barred from seeking a separate deficiency in Nevada.

**B.     Branch Banking Is Not Barred from Obtaining a Judgment Against the Guarantors**

Defendants next contend that because Branch Banking did not obtain a deficiency judgment against the Borrower in the Arizona judicial foreclosure, thereby barring any further action on the debt against the Borrower, Branch Banking has destroyed the Guarantors' subrogation rights. As the Court determined that Branch Banking's failure to obtain a deficiency judgment in the Arizona judicial foreclosure does not bar the present action against the Borrower for a deficiency, Defendants' argument is without merit. Accordingly, the Court finds that Branch Banking is not barred from seeking to recover against the Guarantors in the present action for breach of guarantee.

///

**C.     NRS 40.459(1)(c)[8] Does Not Apply to the Present Dispute**

Defendants contend that Branch Banking is barred from recovering a deficiency because it failed to present any evidence that consideration was in fact paid for the Loan.  Defendants' argument in this regard is premised upon the assumption that NRS 40.459(1)(c) applies to limit the amount of any deficiency judgment.  AB 273, codified as NRS 40.459(1)(c), was signed into law on June 10, 2011.  It provides that:

> [i]f the person seeking the judgment acquired the right to obtain the judgment from a person who previously held that right, the amount by which the amount of the consideration paid for that right exceeds the fair market value of the property sold at the time of sale or the amount for which the property was actually sold, whichever is greater, with interest from the date of sale and reasonable costs[.]

NRS 40.459(1)(c).  Defendants urge that, because Branch Banking acquired the right to obtain a judgment in this action from the FDIC, any deficiency cannot exceed the "amount of consideration paid."

In *Sandpointe Apartments, LLC, et al. v. The Eighth Judicial District Court, et al.*, 129 Nev. Adv. Op. 87, 313 P.3d 849, 853-59 (2013), the Nevada Supreme Court held that NRS 40.459(1)(c) does not apply to cases where the foreclosure sale occurred before June 10, 2011, because the Nevada Legislature did not intend the statute to be retroactive.[9]  Following this logic, two courts in this district have also concluded that NRS 40.459(1)(c) does not apply retroactively to assignments of debt predating the effective date of the statute on June 10, 2011, as the statute's application to such an assignment would violate the Contract Clause.[10]  *See Eagle SPE NV I, Inc. v. Kiley Ranch Cmtys., et al.*, No. 3:12-cv-00245-RCJ-WGC, 2014 WL 1199595, at *3-19 (D. Nev. Mar. 24, 2014)

---

[8]  The Nevada legislature recently amended this statute, though the amendment does not render the statute applicable here.  *See* A.B. No. 196, Nev. Laws Ch. 149 (Nev. 2015).  The relevant subsection is now identified as NRS 40.459(3)(c).  For clarity's sake, this Order refers to the subsection that was in effect as of the assignment from the FDIC to Branch Banking on August 14, 2009—NRS 40.459(1)(c).

[9]  This action does not directly implicate *Sandpointe* as the foreclosure sale occurred on June 21, 2012.

[10]  The Nevada Supreme Court did not have occasion in *Sandpointe* to address the applicability of NRS 40.459(1)(c) under the circumstances presented here, i.e., whether the amendment applies retroactively to pre-enactment assignments.

13

(when applied retroactively to a pre-amendment assignment, NRS 40.459(1)(c) severely impairs the value of the contract in a manner which offends the Constitution); *Branch Banking & Trust Co. v. Regena Homes, LLC, et al.*, No. 2:12-cv-00451-RCJ-GWF, 2014 WL 3661109, at *4 (D. Nev. July 23, 2014) (same); *see also Branch Banking & Trust Co. v. Desert Canyon Phase II LLC*, No. 2:12-cv-01463-JCM-PAL, 2014 WL 2468610, at *3-5 (D. Nev. June 2, 2014) (adopting those portions of *Kiley Ranch* related to the retroactive application of NRS 40.459(1)(c) to assignments made prior to the amendment's effective date); *Branch Banking & Trust Co. v. Pahrump 194, LLC, et al.*, No. 2:12-cv-01462-JCM-VCF, 2014 WL 3747644, at *3-4 (D. Nev. July 30, 2014) (same); *Branch Banking & Trust Co. v. Jones/Windmill, LLC, et al.*, No. 2:12-cv-00452-JCM-GWF, 2014 WL 3845410, at *4 (D. Nev. Aug. 5, 2014) (same).

The Court agrees with the reasoning set forth in these decisions.  In *Kiley Ranch*, Judge Robert Jones determined that NRS 40.459(1)(c) cannot constitutionally apply to assignments made before the statute's effective date.  2014 WL 1199595, at *7.  In a lengthy and thorough analysis addressing whether application of the statute to pre-enactment assignments would violate the Contract Clause of the United States Constitution[11], the court found first that "the statute substantially impairs any existing assignment by reducing the amount an assignee can recover on debt he already purchased under a legal regime where his potential recovery was not limited by the amount he paid for the debt, and without any refund or any other benefit offsetting the loss value." *Id.* at *7.  The court went on to find that while "the amendment had a legitimate public purpose behind it, i.e., the remedying of a broad and general social and economic problem[,]" as applied in

---

[11] "Whether a regulation violates the Contract Clause is governed by a three-step inquiry:  The threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.  If this threshold inquiry is met, the court must inquire whether the State, in justification, [has] a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem, to guarantee that the State is exercising its police power, rather than providing a benefit to special interests.  Finally, the court must inquire whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.  Unless the State itself is a contracting party, as is customary in reviewing economic and social regulation, . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004) (citations and internal quotation marks omitted) (alterations in original).

14

these circumstances "[it] creates an unexpected windfall [to mortgagers] as opposed to avoiding one." *Id.* at *8.  As such, the statute's application to pre-enactment assignments would not further the public purpose of reducing foreclosures.  *Id.*  Moreover, the court found that "even if the law could be characterized as an interest-neutral exercise of police power, the adjustment of the rights and responsibilities of the contracting parties is not based upon reasonable conditions."  *Id.* at *8-11.  Accordingly, the court determined that NRS 40.459(1)(c), as applied to pre-enactment assignments, would violate the Contract Clause.  Finally, in addressing NRS 40.459(1)(c)'s retroactive application to pre-enactment assignments, the court concluded that:

> NRS section 40.459(1)(c) applies only where the assignment at issue occurred on or after the effective date of that statute.  A contrary application would violate the Contract Clause.  And the Court need not concoct any improbable interpretation of the statute to save it from constitutional infirmity.  The Court's interpretation of the statute follows easily from the lack of any objectively retroactive language, the lack of any objective necessity for retroactive effect to carry out the statute's purposes, and the clearly expressed subjective intent of the Nevada Legislature.

*Id.*, at *19.

On August 5, 2014, another court in this district applied the NRS 40.459(1)(c) limitation in a case involving an assignment of interest from Branch Banking to plaintiff Eagle SPE NV 1, Inc. because the assignment occurred after the 2011 NRS 40.459(1)(c) amendment became effective. *Eagle SPE NV 1, Inc. v. S. Highlands Dev. Corp.*, 36 F. Supp. 3d 981, 986 (D. Nev. 2014).  The court held that the statute was "facially applicable" because the assignment from Branch Banking to Eagle occurred on November 8, 2011, after the statute's effective date.  *Id.* at 987.  The court noted the following: "[F]or this analysis, the transaction in question is not the assignment from the FDIC to [Branch Banking]; rather, the transaction at issue is the assignment from [Branch Banking] to Eagle, which occurred after Subsection (1)(c) became effective."[12]  *Id.*  at 988.  The court added: "That the assignment from [Branch Banking] to Eagle occurred before the foreclosure sale does not remove the transaction from the ambit of" NRS 40.459(1)(c).  *Id.*

---

[12] Prior to Branch Banking's assignment of rights to Eagle in *Southern Highlands*, the FDIC assigned its rights under the Note to Branch Banking on August 14, 2009, the same date the FDIC assigned its rights to Branch Banking here.

Defendants argue that the Court should follow the reasoning in *Southern Highlands* rather than *Kiley Ranch*.  Doc. #52 at 23.  However, *Southern Highlands* is easily distinguished from this case because it involved an assignment that occurred after the amendment to NRS 40.459 became effective on June 10, 2011.  Importantly, the court explicitly stated that its analysis was based on the assignment from Branch Banking to Eagle SPE NV 1, rather than the earlier assignment from the FDIC to Branch Banking.  *Id.*  By contrast, the only assignment at issue here is the assignment from the FDIC to Branch Banking, which the Court found occurred on August 14, 2009, long before NRS 40.459(1)(c)'s June 10, 2011 effective date.[13]

As the Court agrees in full with the reasoning and conclusions set forth in *Kiley Ranch*, the Court shall adopt those sections of *Kiley Ranch* related to the retroactive application of NRS 40.459(1)(c) to assignments occurring prior to the statute's effective date.  *See Kiley Ranch*, 2014 WL 1199595 at *3-19.  Here, the FDIC assigned all rights, title, and interest in the Note, the Deed of Trust, and the Guarantee to Branch Banking on August 14, 2009, long before NRS 40.459(1)(c)'s June 10, 2011 effective date.  Accordingly, NRS 40.459(1)(c) does not apply retroactively to limit the amount of any deficiency judgment in this action.  Because NRS 40.459(1)(c) does not apply retroactively to this particular transaction, Defendants' arguments regarding the "amount of consideration paid" and the sufficiency of the evidence in support thereof are moot and need not be resolved.  Additionally, the Court declines to address the additional bases on which Branch Banking argues that NRS 40.459(1)(c) does not apply.[14]

### D.   Defendants Are Not Entitled to an Off-Set for Amounts Paid by the FDIC

NRS 40.459(2) limits the amount a creditor can recover in a deficiency judgment by providing that:

---

[13] Another court in this district recently rejected a similar argument based on *Southern Highlands*, finding that the case did not constitute an intervening change in controlling law.  *Branch Banking and Trust Co. v. Jones/Windmill, LLC*, No. 2:12-cv-0452, 2015 WL 894529, at *2 (D. Nev. Mar. 3, 2015).

[14]  Branch Banking argues that Defendants' proposed application of NRS 40.459(1)(c) violates the Supremacy Clause and that NRS 40.459(1)(c) does not apply to loans acquired from the FDIC because the FDIC is not a "person" under applicable Nevada law.

the "amount of the indebtedness" does not include any amount received by, or payable to, the judgment creditor or beneficiary of the deed of trust pursuant to an insurance policy to compensate the judgment creditor or beneficiary for any losses incurred with respect to the property or the default on the debt.

Defendants assert that the Loss Sharing Agreement[15] between Branch Banking and the FDIC qualifies as an "insurance policy" under NRS 40.459(2), and that any reimbursement Branch Banking receives from the FDIC for losses declared on the Loan will directly reduce the amount that Branch Banking may recover in a deficiency judgment. The Court disagrees.

Under the Loss Sharing Agreement, the FDIC is obligated to reimburse Branch Banking for a percentage of any losses Branch Banking declares on the Loan. The Loss Sharing Agreement requires Branch Banking to use "commercially reasonable best efforts to maximize the collection of amounts due for the loss share assets." Doc. #60, Ex. 1 (Hicks Affidavit), ¶16. Moreover, Branch Banking is obligated "to continue to pursue the obligors and guarantors of the note even if [Branch Banking] has been reimbursed by the FDIC for a loss on any given asset." *Id.*, ¶19. Finally, in the event Branch Banking obtains any recovery from the borrowers or guarantors, "it has an obligation under the [Loss Sharing] Agreement to pay a portion of those recoveries to the FDIC based upon the reimbursements that were previously made to [Branch Banking] by the FDIC. The net effect of this is that if [Branch Banking] receives full payment from a borrower and/or guarantor, [Branch Banking] would not receive any reimbursement from the FDIC." *Id.*

In *Branch Banking & Trust Co. v. Frank, et al.*, No. 2:11-cv-01366-JCM-CWH, 2013 WL 5428112, at *6-7 (D. Nev. Sept. 26, 2013), Judge James Mahan confronted precisely the same issue. The court noted that "the statutory scheme regarding deficiency judgment, as a whole, is understood as being built to prevent unjustified windfalls." *Id.* at *6 (referencing the "one-action rule," codified at NRS 40.430, which seeks to prevent creditors from obtaining a double recovery, and the statutory scheme, which prevents creditors from acquiring secured property at an artificially

---

[15] The Purchase and Assumption Agreement, pursuant to which Branch Banking acquired the subject Loan from the FDIC, encompasses the Loss Sharing Agreement presently at issue. *See* Doc. #60, Ex. 1A.

low price in order to increase the amount of a deficiency judgment).  The court went on to find that:

> the limitation within [NRS 40.459(2)] seeks to prevent creditors from obtaining a windfall by receiving both a payment for the outstanding balance under an insurance policy and a judgment for the full sum against the debtor.  Considering this purpose, it is clear that this provision does not apply to the shared loss agreement between plaintiff and the FDIC. . . .  The fact that plaintiff must refund the FDIC based on the amount that it is able to collect from defendants means that there is no possibility that plaintiff will receive double-recovery on this loan.  Thus, the statutory intent of [NRS 40.459(2)] is not applicable to his arrangement.  In fact, if the court were to consider this arrangement to be an insurance policy, it would defy the purpose of the statutory scheme by giving an unjustified windfall to defendants.

*Id.* at *7.  Thereafter, in an order reconsidering these findings, Judge Mahan considered the exact Assembly Committee statement to which Defendants refer in support of their argument that the Nevada Legislature contemplated that the FDIC loss sharing arrangements would fall within the purview of NRS 40.459(2).  *Branch Banking & Trust Co. v. Frank, et al.*, No. 2:10-cv-01366-JCM-CWH, 2013 WL 6669100, at *10-11 (D. Nev. Dec. 17, 2013).  The court found that the statement "merely reaffirms the conclusion made in the court's prior order" that the loss-sharing agreement in that case did not fall within the purview of NRS 40.459(2).  *See id.* (citing Assemblyman Conklin's final clarifying remark that this provision was intended to "prevent a lender from profiting from a judgment").

Here, the Court agrees with Judge Mahan's reasoning and conclusion that the FDIC's loss sharing provisions do not serve to limit a plaintiff's recovery under NRS 40.459(2).  The Loss Sharing Agreement at issue is identical in all material respects to the one at issue in *Frank*.  Most significantly, in the event Branch Banking recovers anything from Defendants on the Loan, the FDIC will be entitled to a refund based on any reimbursements that were previously made to Branch Banking.  As such, there is no possibility that Branch Banking will receive a double recovery.  Because there is no possibility of double recovery by Branch Banking, and because a contrary conclusion would leave Defendants with an unjustified windfall, the Court concludes that the Loss Sharing Agreement at issue is categorically different from the type of "insurance policy" contemplated in NRS 40.459(2), and thus does not serve to limit Branch Banking's recovery.

Finally, Defendants argue that, because the FDIC and Defendants are co-obligors to the

Loan, they are entitled to an offset of any amounts paid by the FDIC pursuant to NRS 101.040.

NRS 101.040 provides that:

> [t]he amount or value of any consideration received by the obligee from one or more
> of several obligors, or from one or more of joint, or of joint and several obligors, in
> whole or in partial satisfaction of their obligations, shall be credited to the extent of
> the amount received on the obligations of all coobligors to whom the obligor or
> obligors giving the consideration did not stand in the relation of a surety.

Without accepting Defendants' suggestion that the FDIC is a co-obligor under NRS 101.040, the

Court rejects their argument for the same reasons set forth above.  Because there is no possibility

that Branch Banking will recover more than the amount to which it is entitled, NRS 101.040 does

not serve to limit the amount of any deficiency judgment Branch Banking may obtain.

**IV.   Motion to Certify Question to the Nevada Supreme Court**

Defendants move the Court to certify the following questions of law to the Nevada Supreme

Court:

> 1.   Whether NRS 40.459(1)(c) is applicable to a deficiency action when there is
>      a specific assignment of the subject loan that occurred after the enactment of
>      AB273.
>
> 2.   How is "the amount of consideration paid" calculated pursuant to the newly enacted
>      NRS 40.459(1)(c) for a specific loan, not purchased individually for cash, but rather
>      as a part of a portfolio of assets in exchange for an assumption of certain liabilities?
>
> 3.   Is the calculation of "the amount of consideration paid" adjusted based on
>      subsequent reimbursements made to an assignee creditor pursuant to a loss-
>      sharing agreement?
>
> 4.   Whether the exception to the one-action rule set forth in NRS 40.430(6)(c) is
>      applicable to Plaintiff's judicial foreclosure action.

Doc. #71 at 3.

Certification is not mandatory, and "when a federal court confronts an issue of state law

which the state's highest court has not addressed, the federal court's task typically is to predict how

the state's highest court would decide the issue." *Carolina Cas. Ins. Co. v. McGhan*, 572 F. Supp.

2d 1222, 1225 (D. Nev. 2008).  As discussed above, the Court finds that NRS 40.459(1)(c) is not

applicable to the instant assignment.  The Court also finds that the one-action rule is not applicable to Plaintiff's judicial foreclosure action.  Accordingly, the "amount of consideration paid" is not at issue and certification as to both questions is unnecessary.  *See* Nev. R. App. P. 5(a) (providing that the Nevada Supreme Court may answer questions certified to it by United States district courts if the issues of state law "may be determinative of the cause then pending in the certifying court").

**V.    Conclusion**

In sum, the Court rejects Defendants' argument that summary judgment is not appropriate in this case.  Because there are no disputed issues of material fact, the Court concludes that Branch Banking is entitled to summary judgment on liability as to claim one for deficiency and claim two for breach of guarantee.[16]  Moreover, Branch Banking's Application for a Deficiency Judgment Hearing is granted.  The parties shall have an opportunity to submit supplemental briefing concerning the amount of indebtedness on the Loan and the fair market value of the Property at the time of the foreclosure sale.  Thereafter, the Court shall set a deficiency hearing pursuant to NRS 40.457(1).

IT IS THEREFORE ORDERED that Branch Banking's Motion for Summary Judgment as to Liability and Application for Deficiency Judgment Hearing (Doc. #53) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (Doc. #52) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Certify Question to the Nevada Supreme Court (Doc. #71) is DENIED.

---

[16]  The Court notes that Branch Banking did not move for summary judgment on its third claim for breach of the covenant of good faith and fair dealing.  *See generally* Doc. #53.  Should Branch Banking elect to proceed on this claim, a proposed joint pretrial order shall be filed within thirty (30) days of the issuance of this Order.

Additionally, the Court rejects Defendants' argument that summary judgment on liability is not appropriate because Branch Banking has not proven with competent evidence the exact principal and interest owed on the Loan at the time of the foreclosure sale (i.e., "amount of the indebtedness which was secured").  Defendants' argument regarding admissibility of evidence to prove damages is not a necessary element of Branch Banking's Motion for Summary Judgment on liability.

IT IS FURTHER ORDERED that judgment shall be entered in favor of Branch Banking and against Defendants as to claim one for deficiency and claim two for breach of guarantee.

IT IS FURTHER ORDERED that Branch Banking's Motion for a Deficiency Judgment Hearing (Doc. #54) is GRANTED.  The parties shall have thirty (30) days from the issuance of this Order to file opening briefs not to exceed twenty (20) pages concerning the amount of indebtedness on the Loan and the fair market value of the Property at the time of the foreclosure sale.  The parties shall then have ten (10) days thereafter to file response briefs not to exceed ten (10) pages. Thereafter, the Court will set a deficiency hearing pursuant to NRS 40.457(1).

IT IS FURTHER ORDERED that if Branch Banking elects to proceed on claim three for breach of the covenant of good faith and fair dealing, it shall submit a proposed joint pre-trial order pursuant to Local Rules within thirty (30) days of the issuance of this Order.

IT IS SO ORDERED.

DATED this 22nd day of June, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE